# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **AURORA HILL AND ANTHONY HILL, FOR THE USE AND BENEFIT OF ILLINOIS MINE SUBSIDENCE INSURANCE FUND, as subrogee of BADGER MUTUAL INSURANCE COMPANY,** | ) ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-3274** |
| | ) | |
| **UNION PACIFIC RAILROAD, a Delaware corporation,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Plaintiff's Motion to Remand to Illinois State Court (d/e 8).  This Court lacks subject matter jurisdiction over Plaintiff's claim because the amount in controversy does not exceed the $75,000 minimum established by 28 U.S.C. § 1332(a).  Plaintiff's Motion to Remand is, therefore, GRANTED.

## I. BACKGROUND

In September 2020, Plaintiff The Illinois Mine Subsidence Insurance Fund (IMSIF) filed a complaint in the Circuit Court for

the Seventh Judicial Circuit, Macoupin County, Illinois, against Defendant Union Pacific Railroad (Union Pacific).  IMSIF is a fund created by the state of Illinois to provide reinsurance for insurers that provide mine subsidence insurance to property owners in Illinois.  See 215 ILCS 5/803.1.  The statute that created IMSIF required insurers to secure subrogation rights from insureds for mine subsidence claims and authorized the Fund to assert such subrogation rights against parties responsible for subsidence damage.  See 215 ICLS 5/815.1.  IMSIF has in the past filed other lawsuits in this district and in Illinois state court claiming that Union Pacific is liable for damages caused by mine subsidence from coal mines originally owned and operated by Superior Coal Company in Macoupin County, Illinois, between 1904 and 1953. See Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co., No. 17-CV-3199, 2019 WL 4015883, at *2 (C.D. Ill. Aug. 26, 2019), appeal dismissed, No. 19-2965, 2020 WL 1682791 (7th Cir. Jan. 6, 2020); Gillespie Community Unit School Dist. No. 7, Macoupin County v. Union Pacific R. Co., 43 N.E.3d 1155 (Ill. App. 2015).

In the instant action, IMSIF's complaint arises out of a mine subsidence event that occurred on April 8, 2015 and allegedly

damaged the residence of Aurora and Anthony Hill, located at 404 S. Illinois St. in Benld, Illinois.  The complaint states that Badger Mutual Insurance (Badger Mutual) previously made an insurance payment in the amount of $45,184.15 to the Hills to cover mine subsidence damage to the Hill residence and that IMSIF subsequently paid Badger Mutual $45,184.15 pursuant to IMSIF's role as a reinsurer.  IMSIF, which is proceeding solely as the subrogee of the Hills and Badger Mutual, now seeks to recover that $45,184.15, plus IMSIF's reasonable costs of suit, from Union Pacific.

On October 14, 2020, Union Pacific filed a Notice of Removal asserting that this Court has jurisdiction over the litigation pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  See d/e 1.  On November 12, 2020, IMSIF moved to remand this matter to Illinois state court, asserting that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.

Union Pacific filed a Response (d/e 10) to the Motion to Remand (d/e 8) on November 25, 2020.  Union Pacific argues that

the amount in controversy should be calculated by aggregating the amounts sought in 58 mine subsidence claims already tendered by IMSIF to Union Pacific as well as the value of IMSIF's potential future mine subsidence claims against Union Pacific.  <u>See</u> D/e 1, ¶ 41.

On December 14, 2020, IMSIF filed a Reply (d/e 12) to Union Pacific's Response.  IMSIF argues that the amount in controversy includes only the damages sought by IMSIF in relation to the specific mine subsidence incident that caused damage to the Hills' residence and that as this amount is less than $75,000 diversity jurisdiction under § 1332 does not exist.  Union Pacific filed a Surreply (d/e 14) on December 21, 2020.

A week after filing its Notice of Removal in this action, Union Pacific filed a separate declaratory judgment action against IMSIF in this Court, seeking declaratory and injunctive relief to prevent IMSIF from continuing to bring individual mine subsidence claims separately rather than litigating all of IMSIF's claims against Union Pacific together.  <u>See</u> C.D. Ill. Case No. 20-CV-3281.  On October 3, 2020, Union Pacific filed a Motion to Consolidate the instant action and Union Pacific's declaratory action into a single action.  <u>See</u> Case

No. 20-CV-3281, d/e 6.  Union Pacific's declaratory judgment action is ongoing, and the Motion to Consolidate is currently pending.

## II. LEGAL STANDARD

Generally, removal under 28 U.S.C. § 1441 is appropriate only if the federal district court into which an action is removed has original jurisdiction over the action.  Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir.1993).  The removing party bears the burden of demonstrating removal is proper, and removal statutes are strictly construed.  Morris v. Nuzzo, 718 F.3d 660, 668 (7th Cir. 2013) (noting the "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts"); see also Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) ("These statutory procedures for removal are to be strictly construed.").  Any doubts regarding removal should be resolved in favor of the plaintiff's choice of forum in state court.  Morris, 718 F.3d at 668.

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship between the plaintiffs and the defendants and an amount in controversy that exceeds $75,000.

Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 881 (7th Cir. 2001).  The amount in controversy is the amount that the defendant could have paid to satisfy the plaintiff's demands in full on the day of removal. Oshana v. Coca-Cola Co., 472 F.3d 506, 510-11 (7th Cir. 2006). The removing party bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds the $75,000 minimum.  Id. at 511.

### III. ANALYSIS

A district court may exercise diversity jurisdiction if the amount in controversy exceeds $75,000 and the action is between citizens of different States.  28 U.S.C. § 1332(a).  Here, the parties agree that complete diversity of citizenship exists, but IMSIF asserts that the amount in controversy is less than $75,000.

Union Pacific concedes that "the Hill claim," on its own, does not involve more than $75,000.  D/e 10, ¶ 5.  Union Pacific nevertheless asserts that the amount-in-controversy requirement is satisfied because: (1) IMSIF should not be allowed to "manipulate the process" and improperly split its claims to avoid federal jurisdiction; (2) IMSIF is precluded from bringing its claims against Union Pacific by the doctrine of res judicata; (3) the value of all of

IMSIF's current and future mine subsidence claims against Union Pacific should be aggregated for purposes of determining the real amount in controversy; and (4) IMSIF has not followed the proper procedure for disclaiming damages in excess of $75,000.

Union Pacific first argues that IMSIF is engaged in "claim-splitting" and is attempting to "manipulate the process" to avoid federal jurisdiction.   According to an affidavit submitted by Union Pacific Senior Risk Management Representative Jonathan Busse, IMSIF allowed the statute of limitations to run on several claims for reinsurance payment amounts of more than $75,000 before bringing the Hill complaint.  D/e 1, exh. A, ¶ 24.  Union Pacific also asserts that the subsidence losses in the Hill Complaint occurred on the same day as and within half a mile of a number of other mine subsidence incidents that gave rise to several of IMSIF's potential future claims and at least one of IMSIF's previously litigated claims.  See d/e 1, ¶ 31.  Union Pacific argues that these facts give rise to an inference that IMSIF is engaging in strategic piecemeal litigation in order to deprive Union Pacific of access to a federal forum.  See id.

The legal basis for Union Pacific's claim-splitting argument comes from language in <u>Gould v. Artisoft, Inc.</u>, 1 F.3d 544 (7th Cir. 1993), stating that a plaintiff "may not manipulate the process to defeat federal jurisdiction."  1 F.3d at 547.  Union Pacific proposes that this language establishes a general prohibition against attempts to avoid removal via "manipulative" litigation tactics. However, the Seventh Circuit in <u>Gould</u> held only that "a plaintiff 'may not manipulate the process' to defeat federal jurisdiction and force a remand <u>once the case has been properly removed</u>."  <u>Id.</u> (emphasis added); <u>see also</u> <u>Chase v. Shop'N Save Warehouse Foods, Inc.</u>, 110 F.3d 424, 429 (7th Cir. 1997) ("[P]laintiff's <u>post-removal</u> stipulation was a prohibited way to 'manipulate the process to void the removal.'") (emphasis added) (quoting <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 368 (7th Cir. 1993).  As Union Pacific has alleged only pre-removal, rather than post-removal, claim-splitting, <u>Gould</u> does not prevent remand.

Union Pacific also argues that the doctrine of <u>res judicata</u>, also known as claim preclusion, operates to prevent remand.  However, "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b)."

Rivet v. Regions Bank, 522 U.S. 470, 477 (1998).  Accordingly, Union Pacific cannot prevent remand by showing that IMSIF's claims are precluded.

Union Pacific further argues that the true amount in controversy in the instant action includes the aggregated values all of IMSIF's current and potential future mine subsidy claims.  Before the Court can address Union Pacific's aggregation argument, however, the Court must first decide an evidentiary dispute regarding the admissibility of certain evidence from settlement negotiations between IMSIF and Union Pacific. Union Pacific has introduced evidence from settlement negotiations in order to prove that the total amount in controversy if all of IMSIF's claims are aggregated is greater than $75,000.  IMSIF objects to the introduction of this evidence, claiming that Union Pacific has disclosed "the details of the parties' confidential settlement discussions" and that evidence of settlement discussions is inadmissible to prove the amount of a disputed claim under Rule 408 of the Federal Rules of Evidence.  D/e 8, p. 13.  IMSIF has requested that the Court strike references to settlement negotiations from Union Pacific's briefs.  As the parties agree that

the amount in controversy will be far greater than $75,000 if all of IMSIF's ripe claims are aggregated, the settlement discussion evidence is unnecessary.  Accordingly, the Court will strike all references to confidential settlement negotiations from Union Pacific's briefs.  See Braman v. Woodfield Gardens Assoc's, 715 F. Supp. 226, 230 (N.D. Ill. 1991).

Turning to the issue of whether aggregation is appropriate, the general rule is that "multiple persons' claims cannot be combined to reach the minimum amount in controversy." Del Vecchio v. Conseco, Inc., 230 F.3d 974, 977 (7th Cir. 2000).  Union Pacific argues that IMSIF is the only "real party in interest" for all of IMSIF's potential mine subsidence claims against Union Pacific and that these various claims can, therefore, be aggregated because they belong to a single plaintiff.  The Court agrees that IMSIF is the sole real party in interest and could have combined two or more of its claims in a single lawsuit.  See Krueger v. Cartwright, 996 F.2d 928, 931 (7th Cir. 1993) ("The general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name."); Allstate Ins. Co. v. Hechinger Co.,

982 F. Supp. 1169, 1172 (E.D. Va. 1997) ("[J]ust as an individual can aggregate the claims it owns to meet the jurisdictional amount, so, too, can a subrogee aggregate the claims to which it is subrogated, and hence owns, to meet the jurisdictional amount."). However, the fact that a subrogee <u>may</u> aggregate certain claims does not mean that the subrogee <u>must</u> aggregate all of its available claims.  The plaintiff is "the master of the complaint" and "may, by eschewing claims based on federal law, choose to have the cause heard in state court."  <u>Neuma, Inc. v. AMP, Inc.</u>, 259 F.3d 864, 880 (7th Cir. 2001) (quoting <u>Speciale v. Seybold</u>, 147 F.3d 612, 614 (7th Cir.1998)).  Similarly, a plaintiff may choose to have a cause heard in state court by eschewing certain state-law claims which would, if included, have raised the amount in controversy above the jurisdictional minimum.  If the eschewed claims arise from the same transaction or series of transactions as the alleged claim, the plaintiff may be precluded from alleging the eschewed claims the future.  However, as discussed above, claim preclusion is an affirmative defense that cannot be raised in a response to a motion to remand.  The possibility of IMSIF being precluded from alleging

related claims in a hypothetical future lawsuit does not affect the amount in controversy in the claim that IMSIF has actually alleged.

Union Pacific's final argument is that IMSIF has not followed the proper procedure for disclaiming damages in excess of $75,000. In order to effectively disclaim damages in excess of $75,000, a plaintiff must file a binding stipulation that damages will not exceed $75,000 before the defendant removes the case.  IMSIF's complaint does not contain a binding stipulation as to damages because Illinois state practice permits recovery of damages in excess of the amount demanded in the plaintiff's complaint. See Lakin v. GEICO Cas. Co., No. 19-CV-1358, 2020 WL 1452080, at *2 (S.D. Ill. Mar. 25, 2020) ("Furthermore, limiting a prayer for relief does not lower the amount in controversy because, under both federal and Illinois rules, a prayer for relief does not limit the awardable relief.")

However, the absence of a disclaimer does not end the amount-in-controversy inquiry.  In the absence of a disclaimer, a defendant bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds the $75,000 minimum.  See Mihalich v. Pfizer, Inc., No. 04-CV-0933-MJR, 2005 WL 8173654, at *4 (S.D. Ill. Sept. 29, 2005).  Here, Union Pacific

has conceded that the Hill claim alone does not involve an amount in controversy of more than $75,000.  See d/e 10, ¶ 5.  Therefore, despite the absence of an effective disclaimer, this action must be remanded to Illinois state court.

## VI. CONCLUSION

For the reasons stated, the Court STRIKES the references to confidential settlement negotiations from Union Pacific's Notice of Removal (d/e 1) and the attachments thereto and from Union Pacific's Response (d/e 10) to IMSIF's remand motion. Furthermore, for the reasons stated, Plaintiffs' Motion to Remand (d/e 8) is GRANTED.   This cause is remanded to the Circuit Court for the Seventh Judicial Circuit, Macoupin County, Illinois pursuant to 28 U.S.C. § 1447(c).

**ENTERED: September 15, 2021.**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**